**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Francisco Javier BARAJAS–NUNEZ,**
**Defendant–Appellee.**

No. 95–1643.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 8, 1995.

Decided Aug. 6, 1996.

Julie Ann Woods, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Attorney for W.D. of Mich., Grand Rapids, MI, for U.S.

Wade S. Seys (argued and briefed), Grand Rapids, MI, for Francisco Javier Barajas–Nunez.

Before: BROWN, SILER, and MOORE, Circuit Judges.

MOORE, J., delivered the opinion of the court, in which BROWN, J., joined. SILER, J. (pp. 835–36), delivered a separate opinion concurring in part and dissenting in part.

MOORE, Circuit Judge.

The United States appeals the sentence of Defendant–Appellee Francisco Javier Barajas–Nunez because it asserts that the district court departed downward from the sentencing guidelines based on improper factors. For the reasons that follow, we vacate Barajas–Nunez's sentence and remand the case to the district court for resentencing.

## I. Background

In August 1994, Barajas–Nunez was deported from the United States after being convicted of distributing marijuana, an aggravated felony. In September 1994, Barajas–Nunez illegally returned to the United States, allegedly to assist his girlfriend. His girlfriend was pregnant with his child, required surgery, and, according to Barajas–Nunez, did not have anyone else to assist her. Before his deportation, Barajas–Nunez had resided with his girlfriend, with whom he had one other child. In November 1994, Barajas–Nunez was arrested at his girlfriend's residence in Michigan.

Barajas–Nunez was indicted for and pleaded guilty to being found in the United States after an illegal reentry in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). The sentencing guidelines provided that Barajas–Nunez should be sentenced to 57 to 71 months of imprisonment. The presentence report ("PSR") stated that the probation office possessed no information that would justify a departure from the sentencing guidelines. Through counsel, Barajas–Nunez submitted minor factual objections to the PSR, but he did not make a written motion for a downward departure.

At the May 1995 sentencing hearing, the district court asked for comment from the government's attorney, who responded that the government concurred in the sentencing recommendation made by the probation department in the PSR. The court then asked for comment from Barajas–Nunez's counsel, who requested that "... in the interests of justice that this court depart to a lower sentence." The government did not object. The district court then conducted the required allocution of the defendant, who described the circumstances of his illegal reentry and indicated that he returned to the United States to assist his pregnant girlfriend and "to be responsible for my children." The district court then imposed sentence as follows:

The Court is of the opinion that I should not ... impose a 57 months sentence on this defendant. This defendant did not commit any crimes except for illegal reentry, and he is going to be deported. I am not naive enough to believe that once he is deported he won't come back again, but neither do I believe that the government of the United States would be well served by supporting a man in prison for four and one-half years who did nothing more than come back to see his children and to assist in the birth of another child. That is just beyond me to do.

The Court makes a finding that it should depart under the 5K series, 5K2 series of the guidelines manual, specifically, 5K2.0, 5K2.11, and 5K2.13. There are cases and instances the Court believes, as described in the policy statement of 5K2.0, that would warrant departure, but cannot be comprehensively listed and analyzed in advance by the Sentencing Commission. The Court is of the opinion that the controlling decision as to whether and to what extent such departure is warranted can only be made by the Court; and I am one of said Court, and I am literally reading from 5K2.0.

In addition to that, the Court believes that 5K2.11 is impacted. It indicates to the Court and to the readers of the guidelines that sometimes the defendant may commit a crime in order to avoid a perceived greater harm. In this instance, the Court finds as a factual matter that the defendant perceived that his woman was in grave danger of physical harm, and that as a father he was responsible for making certain that she received medical care. In that kind of an instance, I think that, and so find, a reduced sentence may be appropriate—because I believe the circum-

stances diminish society's interest in punishing his conduct in this case.

I also believe that 5K2.13, a policy statement about diminished capacity, is impacted to some degree at least. This defendant has a total of one year of education. With one year of education and no ability to speak English, one cannot expect him to understand and to act the same way a more rationally educated person would react. In addition to that, he has a bullet in his body which was caused by his being robbed and he is in pain. He has been asking for medication for his pain from the county jail, but he has not received any. It strikes me that given the level of his education and his reaction to his woman's illness have diminished to some degree at least his capacity to appreciate what he should or could do with regard to the law.[1]

Thus, the district court departed from § 2L1.2, the applicable provision of the sentencing guidelines that applies only to those who unlawfully enter or remain in the United States, and imposed a sentence of eight months of imprisonment and two years of supervised release. After the district judge imposed sentence, he asked the government's attorney, "Is there anything else the Court should do in this case, Ms. Wood?" The government's attorney answered, "No, Your Honor, thank you." On June 2, 1995, the government filed a notice of appeal. Barajas–Nunez was deported to Mexico in August 1995, but he was rearrested in Michigan in January 1996, for new violations of 8 U.S.C. §§ 1326(a) and 1326(b)(2).

## II. Mootness

Barajas–Nunez's counsel represented in his brief that Barajas–Nunez completed his sentence and was deported in August 1995. Although the parties did not raise this issue, the completion of the sentence and the deportation present a mootness question that we should address.

■ A government appeal of a downward departure is not mooted by the defendant's completion of his sentence and subsequent deportation. *See United States v. Valdez–Gonzalez,* 957 F.2d 643, 646–47 (9th Cir. 1992). The Ninth Circuit held that when the defendant's sentence includes supervised release, which could be converted into incarceration time if the defendant is rearrested in the United States, the government's appeal of the defendant's sentence is not moot. *Id.*

The Ninth Circuit based its holding on the Supreme Court's decision in *United States v. Villamonte–Marquez,* 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983). In that case, the Court held that the defendant's deportation did not moot the government's appeal to the Supreme Court, in which the government sought to reinstate convictions that had been reversed by the court of appeals. The Court stated that the possibility of arrest and imprisonment for the reinstated convictions if the defendants reentered the United States was sufficient to keep the appeal from being moot. *Id.* at 581 n. 2, 103 S.Ct. at 2575 n. 2.

■ Likewise, the government's appeal here is not moot. Barajas–Nunez's sentence included two years of supervised release, which would expire in August 1997. If Barajas–Nunez returned to the United States, as he apparently has, he could be incarcerated, as he was, or otherwise supervised by U.S. authorities pursuant to his supervised release conditions. Therefore, the government's challenge to his sentence is not moot and may be considered by this court.

## III. Forfeiture of Objections To Sentence

■ Barajas–Nunez argues that the government waived any error in the sentence by failing to object to the downward departure at sentencing. The government argues that the district court failed to give the government proper notice of its intent to depart.

The PSR in this case clearly did not provide the government with notice of a possible downward departure, and Barajas–Nunez's counsel did not object in advance to the PSR recommendations regarding departures. However, Barajas–Nunez's counsel did re-

---

1. The district judge's oral comments were provided in written form in the judgment issued the day after the sentencing hearing.

quest a departure at the sentencing hearing itself. Rule 32(b)(6)(D) of the Federal Rules of Criminal Procedure permitted the district court, for good cause shown, to consider an objection raised at any time before sentence was imposed. Although the district court did not make an express finding of good cause, its comments and actions after Barajas–Nunez's allocution indicate that it found such good cause to be present.[2] The government did not raise any objection in the district court to this alleged lack of notice.

Even if the government did not receive advance notice, its failure to object to the merits of the departure cannot be excused because the government failed to give the district court any inkling that it disagreed with the departure. The government not only failed to object when the defendant requested a downward departure, but also failed to object when the district court gave it an opportunity to comment after sentence was imposed. The government had an opportunity to object when the district judge asked if there was anything else he should do with regard to the sentence. *See United States v. Filker*, 972 F.2d 240, 242 (8th Cir. 1992) (government had opportunity to object when court asked if there were "any other matters to be considered"). The government's previous statement to the district court that it concurred in the recommendations contained in the PSR was not a sufficient objection to preserve the sentencing issue for appeal, because it failed to provide the district court with the basis of the government's disagreement with its departure ruling. *See United States v. Houston*, 892 F.2d 696, 706 (8th Cir.1989) (government request to sentence in accordance with the Guidelines "does not rise to the level of a proper objection").

■ Generally, a failure to object at sentencing forfeits any challenge to the sentence on appeal. *United States v. Olano*, 507 U.S. 725, 731, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993) (errors not timely raised in the district court are forfeited). The government's failure to notify the district court of any concern regarding the lack of advance notice and the court's downward departure constituted a forfeiture of the government's objections on both issues. *Id.* at 733–34, 113 S.Ct. at 1777–78 (failure to make a timely objection is a forfeiture of that objection, not a waiver).

■ Although the government forfeited its objections to Barajas–Nunez's sentence, we will review the sentence for plain error. *Olano*, 507 U.S. at 731, 113 S.Ct. at 1776 (forfeited error may be corrected on appeal pursuant to Fed.R.Crim.P. 52(b) if the error is plain and affects substantial rights); *see also United States v. Vital*, 68 F.3d 114, 118–19 (5th Cir.1995) (plain error standard of review applies to unobjected sentencing issues); *United States v. Zeigler*, 19 F.3d 486, 494 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 517, 130 L.Ed.2d 422 (1994) (because an illegal sentence is plain error, an appellate court may review a sentence for plain error even if the government failed to raise the issue in the district court). A "plain error" is an error that is clear or obvious, and if it affects substantial rights, it may be noticed by an appellate court. Fed. R.Crim.P. 52(b); *Olano*, 507 U.S. at 734, 113 S.Ct. at 1777–78. Courts of appeals have authority to correct plain errors, but are not required to do so. *Id.* at 735–36, 113 S.Ct. at 1778–79. Generally, the courts of appeals should exercise their discretion to correct a plain forfeited error that affects substantial rights "only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 736, 113 S.Ct. at 1779 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)).

## IV. The Sentence

The government argues that the district court's departure was improper because the

---

**2.** The government moved to strike portions of Barajas–Nunez's appellate brief that discuss an alleged pre-sentencing meeting between the district judge, the government's attorney, Barajas–Nunez's counsel, and a probation officer. Barajas–Nunez's counsel implied in his brief that the government received notice of the district judge's intent to depart at this alleged meeting. Given our disposition of this appeal and our lack of reliance on the disputed portions of Barajas–Nunez's brief, we deny this motion.

factors that the district court relied upon to justify the departure were adequately considered by the Sentencing Commission. The government also argues that even if the departure itself were proper, the degree of the departure was unreasonable.

### A. The District Court's Downward Departure

According to the Supreme Court's recent decision in *Koon v. United States,* — U.S. —, — – —, 116 S.Ct. 2035, 2043–44, 135 L.Ed.2d 392 (1996), this court reviews a district court's downward departure from the Sentencing Guidelines pursuant to an abuse of discretion standard. The *Koon* Court stated that "[a] district court's decision to depart from the Guidelines ... will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by the sentencing court." *Id.* at —, 116 S.Ct. at 2046. The *Koon* Court also noted that:

> [W]hether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point. Little turns, however, on whether we label review of this particular question abuse of discretion or de novo, for an abuse of discretion standard does not mean a mistake of law is beyond appellate correction. A district court by definition abuses its discretion when it makes an error of law. That a departure decision, in an occasional case, may call for a legal determination does not mean that parts of the review must be labeled de novo while other parts are labeled an abuse of discretion. The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.

*Id.* at — – —, 116 S.Ct. at 2047–48 (citations omitted). Thus, the *Koon* Court's abuse of discretion standard replaces the three-part standard of review adopted by this court in cases such as *United States v. Fletcher,* 15 F.3d 553, 556 (6th Cir.1994); *United States v. Rutana,* 932 F.2d 1155, 1158 (6th Cir.), *cert. denied,* 502 U.S. 907, 112 S.Ct. 300, 116 L.Ed.2d 243 (1991); and *United States v. Brewer,* 899 F.2d 503, 506 (6th Cir.), *cert. denied,* 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990).

■ In this case, the district court committed plain error by relying on improper factors as a basis for a departure pursuant to U.S.S.G. § 5K2.13, the diminished mental capacity policy statement. U.S.S.G. § 5K2.13 states:

> If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

In prior cases this court has held that diminished mental capacity is found where a defendant's condition affects his ability to process information or to reason. *United States v. Johnson,* 979 F.2d 396, 401 (6th Cir.1992); *United States v. Hamilton,* 949 F.2d 190, 193 (6th Cir.1991) (per curiam). There is no indication that Barajas–Nunez was unable to process information or to reason, or that he did not appreciate the wrongfulness of his conduct. Barajas–Nunez admitted that he had been told not to reenter the United States, but he did it anyway. Section 5K2.13 uses the words "suffering from significantly reduced mental capacity," implying that the departure is intended to be available in cases of mental illness, injury, or defect.

■ Barajas–Nunez's inability to speak English and lack of formal education, upon which the district court based its diminished mental capacity finding, do not affect Barajas–Nunez's ability to process information or to reason. Thus, these factors do not constitute significantly reduced mental capacity as a matter of law. Barajas–Nunez's inability to speak English may not be considered as a basis for departure. *See United States v. Rodriguez,* 882 F.2d 1059, 1066 (6th Cir.1989) (holding that inability to speak English is irrelevant to sentencing). Moreover, to equate an inability to speak English with a mental illness or defect insults the many

people without mental illnesses or defects who speak little or no English.

■ Barajas-Nunez's lack of formal education also cannot be considered as a proxy for a mental illness or defect that might constitute diminished mental capacity. Lack of education is a disfavored ground for departure. *Rodriguez,* 882 F.2d at 1066 (citing U.S.S.G. § 5H1.2 for the principle that lack of education should not ordinarily be considered in sentencing), *cert. denied,* 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990); *Koon,* —— U.S. at ——, 116 S.Ct. at 2045 (education and vocational skill are discouraged factors that should be bases for departure only in exceptional cases). *See also* 28 U.S.C. § 994(e) (requiring Sentencing Commission to assure that the guidelines "reflect the general inappropriateness of considering the education" of the defendant in determining the length of sentence). *Koon* carefully notes that discouraged factors such as lack of education can be a basis for departure: "If the special factor is a discouraged factor ... the [district] court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." —— U.S. at ——, 116 S.Ct. at 2045. Thus, the district judge could find in an appropriate case that a lack of education is present to an exceptional degree that makes the case extraordinary. However, the district judge may not equate lack of education with diminished mental capacity under U.S.S.G. § 5K2.13. In other words, we do not "rule[ ] out on a categorical basis," *Koon* at ——, 116 S.Ct. at 2051, the factor of lack of education; rather, we hold that lack of education (and inability to speak English) cannot alone provide the basis for a diminished mental capacity finding under U.S.S.G. § 5K2.13. *See Koon* at —— ——, 116 S.Ct. at 2051–52 (finding abuse of discretion because collateral employment consequences cannot take the case of police officers' civil rights violations out of the heartland of sentencing guidelines for civil rights offenses). Thus, the circumstances found by the district court in this case do not constitute significantly diminished mental capacity as a matter of law, and the district court abused its discretion and committed plain error by departing on that basis.

■ The district court also found that a departure was warranted under the "lesser harms" policy statement in § 5K2.11 because Barajas–Nunez perceived that his girlfriend was in grave danger of physical harm and that he was responsible for making sure she received medical care. U.S.S.G. § 5K2.11 states in pertinent part:

> Sometimes, a defendant may commit a crime in order to avoid a perceived greater harm. In such instances, a reduced sentence may be appropriate, provided that the circumstances significantly diminish society's interest in punishing the conduct, for example, in the case of a mercy killing. Where the interest in punishment or deterrence is not reduced, a reduction in sentence is not warranted. For example, providing defense secrets to a hostile power should receive no lesser punishment simply because the defendant believed that the government's policies were misdirected.

Although we believe that the district court's findings in this case do not support a lesser harms departure, which applies only in narrow, extreme circumstances such as mercy killing, we cannot find that any error on this · ground is plain, given the dearth of caselaw on the application of the lesser harms provision in similar contexts and the deference owed to the district court's determination that a case falls outside a guideline's heartland. *See Koon,* —— U.S. at —— – ——, 116 S.Ct. at 2046–47 (appeals courts owe substantial deference to district court's determination that a case is sufficiently unusual to fall outside the heartland carved out by each guideline).

Finally, although the district court cited U.S.S.G. § 5K2.0 in its sentencing decision, the district court did not rely on that provision to support the downward departure at issue in this case. Section 5K2.0 is a policy statement that permits departures when the district court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. The district court here made no express finding

of unusual circumstances except for the findings made pursuant to the diminished capacity and lesser harms departures. Thus, the district court did not purport to rely independently on § 5K2.0 as a basis for its departure decision in this case.

### B. Substantial Rights/Fairness, Integrity, & Public Reputation of the Judicial System

■ Pursuant to Fed.R.Crim.P. 52(b), appellate courts may correct plain errors only if they affect substantial rights. The plain error in this case in considering the factors of inability to speak English and lack of education as showing diminished mental capacity pursuant to U.S.S.G. § 5K2.13, does affect substantial rights because it affects the outcome of the case by substantially reducing the defendant's sentence—here, by 49 months. *Olano,* 507 U.S. at 734, 113 S.Ct. at 1777–78 (an error affects substantial rights if the error affects the outcome of the district court proceedings). The sentence imposed by the district court was merely one-eighth of the sentencing guideline range midpoint.

Judge Siler's dissent focuses on whether the district judge's error concerning diminished mental capacity affected substantial rights. Judge Siler correctly notes that this case is unusual, in that it is not the defendant who is claiming that an error affects his substantial rights. Instead, the government is objecting, albeit belatedly, to the erroneous sentence. Recognizing that it is far easier for a defendant to show violation of his substantial rights, we cannot assume that either the *Olano* Court or the drafters of Fed.R.Crim.P. 52(b) intended that only defendants and never the government should be able to demonstrate that a plain error affected substantial rights. Indeed, the language of Rule 52(b) provides that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court," making no distinction between the government and defendants. Moreover, although in *United States v. Zeigler,* 19 F.3d 486, 494 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 517, 130 L.Ed.2d 422 (1994), the government was successful in invoking plain er-

ror analysis where a sentence's illegality became apparent only on appeal, we do not believe that is the sole circumstance where the government may establish a plain error that affects substantial rights. Pursuant to *Olano,* 507 U.S. at 734, 113 S.Ct. at 1777–78, the government can show an error affects substantial rights if the error affects the outcome of the district court proceedings. Here, the error may have produced the extraordinary downward departure to one-eighth of the sentencing guideline range midpoint, dramatically impacting the sentence, and thereby affecting the substantial rights of the government and the people of the United States that this defendant be sentenced correctly in accordance with the legal principles of the sentencing guidelines.

The departure in this case was based, at least in part, on an incorrect interpretation of the sentencing guidelines. As shown above, this plain error affects substantial rights. Under *Olano* we have discretion to correct such a plain error only if it seriously affects "the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736, 113 S.Ct. at 1779. Permitting sentencing courts to disregard governing law would diminish the integrity and public reputation of the judicial system. Allowing this substantial departure to stand also would diminish the fairness of the criminal sentencing system by imposing a significantly smaller sentence on Barajas–Nunez than on all other aliens who illegally reenter the United States. Such a result would fly in the face of one of the primary purposes of the sentencing guidelines—the elimination of disparities in sentencing. *See Burns v. United States,* 501 U.S. 129, 133, 111 S.Ct. 2182, 2184–85, 115 L.Ed.2d 123 (1991) (one purpose of Sentencing Reform Act and Guidelines was to eliminate disparities associated with prior indeterminate sentencing scheme); U.S.S.G. Ch.1, Pt. A, § 3 (in enacting sentencing guidelines, "Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders"). Thus, while we certainly do not condone the government's failure to object during the proceedings below, and while we recognize the unfairness to the district judge of the government's belat-

ed recognition of the error, we will exercise our discretion to correct the district court's plain error in this case.

## C. Necessity of Remand

Because we find that the district court's departure rested, at least in part, on an invalid ground, we must remand unless we can determine that the district court would have imposed the same sentence absent reliance on the invalid ground. *Koon*, —— U.S. at —— – ——, 116 S.Ct. at 2053–54; *Williams v. United States*, 503 U.S. 193, 203, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992). In this case, however, we cannot make that determination given the district court's apparent reliance on several factors jointly as its basis for departure and its failure to provide any justification for the *extent* of its departure in this case. The district court did state clearly its reasons for departing, i.e. the rationales of lesser harms and diminished capacity, but it then simply imposed the eight-month sentence without any discussion of how the eight-month figure was calculated or why it was appropriate. The court stated:

> The Court, for all of the reasons that I just stated, intends to depart from the guidelines and does depart from the guidelines. It is the sentence of the Court that the defendant be sentenced to the custody ... of the Bureau of Prisons for a term of 8 months. He is to receive credit for time served. Once released from imprisonment, he shall be placed on supervised release for a term of two years....
>
> And specifically and most importantly, he shall comply with the rules and regulations of the Immigration and Naturalization Service, and if deported from this country, either voluntarily or involuntarily, as a condition of his supervised release he shall not reenter the United States illegally of course during the period of the two year court ordered supervision, and if he does, he will be cited for violation of the terms of his supervised release and subject to sentence by this Court.

Decisions preceding *Koon* have implied, if not explicitly required, that a district judge explain the reasons both for the departure and for the *extent* of the departure. This court's prior cases stated that this court would "determine[s] reasonableness [of the extent of the departure] based, in part, on 'the reasons for the imposition of the particular sentence as stated by the district court.'" *United States v. Little*, 61 F.3d 450, 453 (6th Cir.1995) (quoting *United States v. Thomas*, 24 F.3d 829, 833 (6th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 453, 130 L.Ed.2d 362 (1994)). *See also Fletcher*, 15 F.3d at 556 (stating that reasonableness of a departure is determined by comparing general sentencing policy with the reasons for departure given by the district court); *United States v. Feinman*, 930 F.2d 495, 502 (6th Cir.1991) (same); *United States v. Lassiter*, 929 F.2d 267, 271 (6th Cir.1991) (district court's failure to justify the extent of its departure makes meaningful appellate review of the departure impossible). Other circuits have explicitly required district courts to justify the extent of their departures. *United States v. Perkins*, 963 F.2d 1523, 1528 (D.C.Cir.1992) ("[t]he district court erred when it failed to give specific reasons explaining the extent of its departure."); *United States v. Lira–Barraza*, 941 F.2d 745, 751 (9th Cir.1991) (en banc) ("To facilitate appellate review the district court's statement should include a reasoned explanation of the extent of the departure founded on the structure, standards and policies of the Act and Guidelines."); *United States v. Ocasio*, 914 F.2d 330, 336 (1st Cir. 1990) ("Generally, a sentencing judge must articulate not only his or her reasons for departing from the GSR [Guideline Sentencing Range], but must also offer a rationale for the degree of departure."); *United States v. Gardner*, 905 F.2d 1432, 1437 (10th Cir.) ("Thus the district court must articulate not only its reasons for a departure but also its reasons explaining the degree of departure leading to the 'particular sentence' imposed."), *cert. denied*, 498 U.S. 875, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990). Although *Koon* has changed the standard of review to an abuse of discretion standard, the rationale for requiring an explanation of reasons for departure and the extent thereof still remains.

The district court in this case made a drastic departure by imposing an eight-month sentence when the guidelines called for a minimum 57-month sentence. The district court's failure to provide the basis for the *extent* of its departure renders its decision essentially unreviewable by this court, which cannot evaluate whether the district court abused its discretion in determining the degree of its departure absent any information about the district court's reasoning. Although *Koon* requires that due deference be given to a district judge's decision to depart on the basis that the facts take the case out of the heartland, and that the courts of appeals review only for abuse of discretion, no appellate review can be meaningful until the appellate court knows the basis for both the departure and its extent. Moreover, the lack of a basis for the extent of the departure in this case makes it impossible for us to determine whether the district judge would have imposed the same sentence absent reliance on the erroneous diminished capacity finding, requiring us to remand the case for resentencing. On remand, the district court should provide its rationale for the extent of any departure it may order.

## V. Conclusion

Although the government forfeited its objections to the sentence, the district court's downward departure based on diminished mental capacity constituted plain error. We will exercise our discretion to correct this plain error because the sentence far below the guideline range was based in part on this misconstruction of an applicable guideline. Therefore, Barajas–Nunez's sentence is **VACATED** and the case is **REMANDED** to the district court for resentencing in accordance with this opinion.

SILER, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority opinion's conclusion that the district court erred in its downward departure on the sentence. I also agree with the conclusion in Part III that the prosecution forfeited its objection to the downward departure. I further agree with the application of the *Koon* decision, which

precludes a finding of plain error when the district court departed under the "lesser harms" policy statement in USSG § 5K2.11 because Barajas–Nunez thought his girlfriend was in danger of physical harm.

However, I respectfully dissent from Part IV of the majority opinion that concludes that it was plain error for the district court to have departed downward from the Guidelines under USSG § 5K2.13, the diminished mental capacity provision. Under Fed. R.Crim.P. 52(b), if the error was plain and affected substantial rights, we may correct the error, but we are not required to do so. *United States v. Olano,* 507 U.S. 725, 735–36, 113 S.Ct. 1770, 1778–79, 123 L.Ed.2d 508 (1993). Before proceeding to the principle from *Olano* that the court should correct a plain forfeited error that affects substantial rights when the "error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings,'" *id.* at 736, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)), the court must first determine whether the error affected "substantial rights." I do not think it did.

Finding "substantial rights" may be as elusive as deciding what error is "plain." In deciding whether substantial rights have been affected, "[n]ormally, although perhaps not in every case, the defendant must make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong of Rule 52(b)." *Id.* at 735, 113 S.Ct. at 1778. However, defendant here is not trying to show prejudice. To the contrary, it would prejudice his case if we were to reverse the district court.

*United States v. Zeigler,* 19 F.3d 486, 494 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 517, 130 L.Ed.2d 422 (1994), is the only case cited in the majority opinion where a federal appellate court found plain error in favor of the government, when the government forfeited its objection to the sentence. There, the court did not even mention "substantial rights" and barely mentioned Rule 52(b). That case is much different from the case at bar, as the failure of the government in *Ziegler* to object at sentencing was excused because the law of the circuit was

consistent with the sentence rendered by the district court. Only when the Supreme Court rendered its decision in *Deal v. United States,* 508 U.S. 129, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993), while *Ziegler* was on appeal, was it apparent that Ziegler's sentence was illegal, which was plain error. In this case, there is no legal excuse by the government as to why it did not object.

Here, the sentence imposed by the district court, although erroneous, was not illegal, as it fit within the statutory limits of 8 U.S.C. § 1326. Moreover, although the majority opinion suggests that the error by the sentencing court affected substantial rights, it couches those rights in terms of a fairness in the criminal sentencing system. Put another way, it was unfair to all other similarly-situated defendants who may have to serve longer sentences for the same offense. Thus, this is an attack on the integrity and public reputation of the judicial system under the language from *Olano.* Nevertheless, I am not convinced that prejudice to the prosecution in this case involves nonrelated cases that the prosecution in the Western District of Michigan or the several other federal districts may or may not pursue. I also do not think that it diminishes the integrity and public reputation of the judicial system. If there is something unfair here, it is unfair to the trial judge who was ambushed on appeal, when he was not given an opportunity to correct any errors at sentencing because the prosecution failed to object.

Therefore, I would affirm the sentence in this case because I think that when the government forfeited its objection in the sentencing process, there was no plain error. The sentence was not illegal nor was there a significant change in the law, such as occurred in *Deal.* Moreover, "substantial rights," as described in Olano, are those rights of the defendant at bar, not substantial rights of defendants in other cases.